1   IRELL & MANELLA LLP
    Morgan Chu (Bar No. 70446)
2   Christopher Vanderlaan (Bar No. 155628)
    Benjamin Hattenbach (Bar No. 186455)
3   1800 Avenue of the Stars, Suite 900
    Los Angeles, California 90067-4271
4   Telephone:  (310) 277-1010
    Facsimile:   (310) 203-7199
5
    Attorneys for Plaintiff
6   ZONE LABS, INC.

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12   Zone Labs, Inc.                    )   Case No. C 01-4231 VRW
                                        )
13                    Plaintiff,        )   **ZONE LABS' NOTICE OF MOTION AND**
                                        )   **MOTION FOR ORDER HOLDING**
14          v.                          )   **SYGATE IN CONTEMPT AND**
                                        )   **AWARDING APPROPRIATE RELIEF**
15   Sygate Technologies, Inc.          )
                                        )   Date:    August 4, 2005
16                    Defendant.        )   Time:    2:00 PM
                                        )   Judge:   Hon. Vaughn R. Walker
17                                      )
                                        )
18   _____)

19

20

21

22              **DOCUMENT FILED UNDER SEAL**

23            **NOT TO APPEAR ON THE PUBLIC DOCKET**

24

25

26

27

28

1280161                                          ZONE LABS' NOTICE OF MOTION AND MOTION FOR
                                                 ORDER HOLDING SYGATE IN CONTEMPT AND
                                                     AWARDING APPROPRIATE RELIEF
                                                           (C 01-4231 VRW)

# TABLE OF CONTENTS

Page

I.  Introduction ...................................................................................................... 2

II.  Factual Background ........................................................................................... 3

    A.  Sygate's Infringement of Zone Labs' Patent ........................................... 3

    B.  The Permanent Injunction Against Sygate's Unlicensed Sales of Its
    Infringing Enterprise Software ................................................................. 4

III.  Argument ............................................................................................................ 6

REDACTED



Page

IV.    CONCLUSION ...................................................................................25

1

## TABLE OF AUTHORITIES

2

Page(s)

3  **All citations and quotations omitted, except where otherwise indicated. Cases**

4  *Alyeska Pipeline Serv. Co. v. Wilderness Society,*
       421 U.S. 240 (1975)..................................................................... 20

5

6  *Am. Airlines, Inc. v. Allied Pilots Assoc.,*
       53 F. Supp. 2d. 909 (N.D. Tex. 1999), *aff'd*, 228 F.3d 574 (5th Cir. 2000),
       *cert. denied,* 531 U.S. 1191 (2001) ..................................... 20

7

8  *Amstar Corp. v. Envirotech Corp.,*
       823 F.2d 1538 (Fed. Cir. 1987)............................................... 13, 14

9  *Benjamin v. Frasier,*
       No. 75 Civ. 3073(HB), 2002 WL 31845111  (S.D.N.Y. Dec. 16, 2002.) .......... 10

10

11  *Connolly v. J.T. Ventures,*
       851 F.2d 930 (7th Cir. 1988)............................................ 18, 21, 22

12  *Cook v. Ochsner Found. Hosp.,*
       559 F.2d 270 (5th Cir. 1977).................................................. 20

13

14  *Donovan v. Burlington N., Inc.,*
       781 F.2d 680 (9th Cir. 1986)............................................... 20, 21

15  *Donovan v. Mazzola,*
       716 F.2d 1226 (9th Cir. 1983), *cert. denied,* 464 U.S. 1040 (1984) ........... 9

16

17  *Dow Chem. Co., v. Chem. Cleaning, Inc.,*
       434 F.2d 1212 (5th Cir. 1970)................................................. 20

18  *Emma C. v. Eastin,*
       No. C96-4179, 2001 U.S. Dist. LEXIS 16099  (N.D. Cal. October 4, 2001) ........ 7

19

20  *Frank Music Corp. v. MGM Inc.,*
       772 F.2d 505 (9th Cir. 1985).................................................. 19

21  *FTC v. Gill,*
       183 F. Supp. 2d 1171 (C.D. Cal. 2001)......................................... 7

22

23  *Gen. Signal Corp. v. Donallco, Inc.,*
       787 F.2d 1376 (9th Cir. 1986)............................................. 7, 11

24  *Gen. Talking Pictures Corp. v. W. Elec. Co.,*
       304 U.S. 175 (1938).......................................................... 22

25

26  *Glover v. Johnson,*
       934 F.2d 703 (6th Cir. 1991)................................................. 10

27  *Goya Foods, Inc. v. Wallack Mgmt. Co.,*
       290 F.3d 63 (1st Cir. 2002).................................................. 21

28

Page(s)

*Graves v. Kemsco Group Inc.,*
864 F.2d 754 (Fed. Cir. 1988)..................................................................... 12

*GTE Sylvania, Inc. v. Consumers Union,*
445 U.S. 375 (1980) ...................................................................................... 8

*Holmes v. Atlas Garage Door Co.,*
63 F. Supp. 692 (S.D. Cal. 1945) ............................................................... 18

*In re Henry,*
266 B.R. 457 (Bankr. C.D. Cal. 2001) ................................................... 20, 21

*Int'l Star Registry, v. SLJ Group, Inc.,*
325 F.Supp.2d 879 (N.D. Ill. 2004)............................................................... 9

*Jacobson v. Cox Paving Co.,*
No. CIV 89-1786, 1992 U.S. Dist. LEXIS 21234 (D. Az. April 1, 1992) ............ 8

*Jerry's Famous Deli, Inc. v. Papnicolaou,*
383 F.3d 998 (9th Cir. 2004)................................................... 18, 19, 22

*Kamar Int'l, Inc. v. Russ Berrie & Co.,*
752 F.2d 1326 (9th Cir. 1984)..................................................................... 19

*Lam, Inc. v. Johns-Manville Corp.,*
718 F.2d 1056 (Fed. Cir. 1983) ................................................................... 14

*Landmark Legal Found. v. EPA,*
272 F.Supp.2d 70 (D. D.C. 2003) .............................................................. 10

*Leman v. Krentler-Arnold Hinge Last Co.,*
284 U.S. 448 (1932) .................................................................................... 18

*Maier Brewing Co. v. Fleischmann Distilling Corp.,*
390 F.2d 117 (9th Cir. 1968)....................................................................... 18

*Manhattan Indus., Inc. v. Sweater Bee by Banff Ltd.,*
885 F.2d 1 (2d Cir. 1989)...................................................................... 18, 19

*Micro Chem., Inc. v. Lextron, Inc.,*
318 F.3d 1119 (Fed. Cir. 2003) ................................................................... 12

*Micro Motion, Inc. v. Exac Corp.,*
761 F. Supp. 1420 (N.D. Cal. 1991)............................................................ 16

*Milgo Elec. Corp. v. United Bus. Communications, Inc.,* 623 F.2d 645 (10th Cir.
1980)...................................................................................................... 14, 16

*Monsanto Chem. Co. v. Perfect Fit Prods. Mfg. Co.,*
349 F.2d 389 (2d Cir. 1965), *cert. denied,* 383 U.S. 942 (1966) ...................... 18

Page(s)

*Mutual Fed. Savings & Loan Ass'n v. Richards & Assoc., Inc.,*
   872 F.2d 88 (4th Cir. 1989) .................................................................... 10

*N.L.R.B. v. Ironworkers Local 433,*
   169 F.3d 1217 (9th Cir. 1999) .................................................................. 9

*Panduit Corp. v. Stahlin Bros. FibreWorks, Inc.,*
   575 F.2d 1152 (6th Cir. 1978) .................................................................. 12

*Paper Converting Mach. Co. v. Magna-Graphics Corp.,* 745 F.2d  11 (Fed. Cir.
   1984) ...................................................................................................... 14, 16

*Perry v. O'Donnell,*
   759 F.2d 702 (9th Cir. 1985) .......................................................... 7, 20, 21

*Sebastian v. Tex. Dep't of Corrs.,*
   558 F. Supp. 507 (S.D. Tex. 1983) ......................................................... 21

*Shakman v. Democratic Org. of Cook County,*
   533 F.2d 344 (7th Cir.), *cert denied,* 429 U.S. 858 (1976) .................. 21

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
   106 F.2d 45 (2nd Cir. 1939) .................................................................... 19

*Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer*
   *Maschinenfabrik Aktiengesellschaft,*
   903 F.2d 1568 (Fed. Cir. 1990) .......................................................... 21, 22

*State Indus., Inc. v. Mor-Flo Indus., Inc.,*
   883 F.2d 1573 (Fed. Cir. 1989), cert. den., 493 U.S. 1022 (1990) ............ 12, 14

*Stone v. San Francisco,*
   No. 91-16927, 1992 U.S. App. LEXIS 19513  (9th Cir. Aug. 25, 1992) ............ 7

*Tranzact Tech., Inc. v. 1Source Worldsite,*
   No. 04-1418, 2005 WL 1083760 (7th Cir. May 4, 2005) ........................ 9

*United States v. Greyhound Corp.,*
   363 F.Supp. 525 (N.D. Ill. 1973) ............................................................ 10

*United States v. United Mine Workers,*
   330 U.S. 258 (1947) ............................................................................ 11, 20

*Vertex Distrib. v. Falcon Foam Plastics, Inc.,*
   689 F.2d 885 (9th Cir. 1982) .................................................................... 7

*Vuitton et Fils S.A. v. Carousel Handbags,*
   592 F.2d 126 (2d Cir. 1979) .................................................................... 18

*W.R. Grace & Co.-Conn, v. Intercat, Inc.,*
   60 F. Supp. 2d 316 (D. Del. 1999) .......................................................... 16

Page(s)

**Statutes**

18 U.S.C. § 401(3) ................................................................................................. 7

35 U.S.C. § 284 ..................................................................................................... 12

1    **NOTICE OF MOTION**

2    PLEASE TAKE NOTICE that on August 4, 2005 at 2:00 PM, or at a date otherwise set by the

3    Court, Plaintiff Zone Labs, Inc. ("Zone Labs"), will and hereby does move, before the Honorable

4    Vaughn R. Walker, U.S.D.C.J., United States Courthouse, Courtroom 6, 17th Floor, 450 Golden Gate

5    Ave., San Francisco, CA 94102, for the entry of an Order in the form submitted herewith.  In support,

6    Zone Labs relies on this Motion For Order Holding Sygate In Contempt And Awarding Appropriate

7    Relief, the Supplemental Report of the Parties' Jointly-Appointed Accountant, Mark Hayden, CPA

8    ("Deloitte Rpt."), and supporting Exhibits, and the Declarations of Gregor Freund ("Freund Decl.") and

9    Christopher Vanderlaan ("Vanderlaan Decl.") and supporting Exhibits, submitted herewith.

10    Zone Labs' motion seeks an Order finding Defendant Sygate Technologies, Inc. ("Sygate") in

11    civil contempt for violating this Court's Final Judgment and Injunction on Consent (the "Injunction")

12    (Doc #38, signed on July 5, 2002, and entered on July 17, 2002), imposing sanctions, and awarding

13    Zone Labs compensatory damages, fees and expenses, and other appropriate relief.[1]  Ex. 2.

14    **ISSUE STATEMENT**

15    The Injunction, entered in connection with a July 1, 2002 Settlement Agreement between the

16    parties (the "Agreement"), resolved patent infringement litigation between Sygate and Zone Labs, Inc.

17    that was before the Court in 2001 and 2002.  The Injunction, among other things, ordered Sygate to stop

18    selling certain software without a license from Zone Labs.  As part of the Agreement, Zone Labs granted

19    Sygate a restricted license and Sygate agreed to pay royalties according to the Agreement's terms.

20

21

22    REDACTED

23

24

25

26

27    REDACTED

28



REDACTED

**POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION**

I.    **INTRODUCTION**

REDACTED

REDACTED

## II.    FACTUAL BACKGROUND

### A.    Sygate's Infringement Of Zone Labs' Patent.

Nearly a decade ago, Mr. Gregor Freund developed pioneering technologies for centralized management of Internet access by computers connected together in networks, and discovered how to apply those innovations in guarding against hackers, worms, malicious programs, and other potential threats to computer network security. (Freund Decl. ¶ 2). The United States Patent and Trademark Office issued Mr. Freund a patent, U.S. Patent No. 5,987,611, that protects his inventions. Mr. Freund founded Zone Labs to commercialize those inventions and, since that day, has served as its CEO and head. *Id.* ¶ 4. Under Mr. Freund's guidance and on the shoulders of his patented inventions, Zone Labs has grown to become a global leader in the marketplace for Internet security software solutions.

---

[2]    In a concurrently filed motion, Zone Labs seeks a ruling that Sygate's breaches of the Agreement were material.

1    With the proliferation of computer networks and corresponding security threats in recent years,

2  the areas in which a decade ago Mr. Freund was conducting groundbreaking technological research

3  became ripe for commercialization.  Sygate opportunistically decided, during the Internet boom, to

4  capitalize on the patented advances made by Mr. Freund.  Rather than operate lawfully, however, Sygate

5  copied Mr. Freund's patented technology and began selling infringing software in direct competition

6  with Zone Labs.  Sygate sold its infringing software at reduced prices to customers with whom Zone

7  Labs was negotiating, resulting in lost sales, price erosion and other harm to Zone Labs.

8    **B.    The Permanent Injunction Against Sygate's Unlicensed Sales Of Its Infringing
        Software.**



, Sygate agreed to entry of a Final Judgment And Injunction On Consent that:

- Conclusively determined that all claims of Zone Labs' patent are valid and enforceable. Ex. 2 at ¶ 2.[3]
- Permanently enjoined Sygate from making, using, selling, offering to sell, or importing its "Sygate Secure Enterprise" software—the software that infringed Zone Labs' patent—without a license. *Id.* at ¶¶ 3.A and 3.B.

---

[3] Exhibit references herein are to the exhibits attached to the Declaration of Christopher A. Vanderlaan, filed concurrently herewith, unless otherwise noted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



REDACTED

1280161



REDACTED

**III.  ARGUMENT**

This Court permanently enjoined Sygate from making, using, selling or offering for sale Sygate's infringing Sygate Secure Enterprise ("SSE") product unless the activity is licensed by Zone Labs.

REDACTED



REDACTED

1280161

ZONE LABS' NOTICE OF MOTION AND MOTION FOR
ORDER HOLDING SYGATE IN CONTEMPT AND
AWARDING APPROPRIATE RELIEF
(C 01-4231 VRW)



REDACTED

ZONE LABS' NOTICE OF MOTION AND MOTION FOR
ORDER HOLDING SYGATE IN CONTEMPT AND
AWARDING APPROPRIATE RELIEF
(C 01-4231 VRW)



REDACTED

1280161

ZONE LABS' NOTICE OF MOTION AND MOTION FOR
ORDER HOLDING SYGATE IN CONTEMPT AND
AWARDING APPROPRIATE RELIEF
(C 01-4231 VRW)



REDACTED



REDACTED

1280161

- 11 -

ZONE LABS' NOTICE OF MOTION AND MOTION FOR
ORDER HOLDING SYGATE IN CONTEMPT AND
AWARDING APPROPRIATE RELIEF
(C 01-4231 VRW)



REDACTED

A commonly used framework for determining a claimant's eligibility for lost profits is set forth in *Panduit Corp. v. Stahlin Bros. FibreWorks, Inc.*, 575 F.2d 1152 (6th Cir. 1978); *see also Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1121–26 (Fed. Cir. 2003) (applying *Panduit*).  Under *Panduit*, a claimant is entitled to lost profits when the following four factors are met: 1) demand for the patented product; 2) the absence of acceptable non-infringing substitutes; 3) the manufacturing and marketing capacity to exploit the demand; and 4) the amount of profit the patent holder would have made.

Where there are other competitors in the market beyond the claimant and the alleged infringer, i.e., the second factor is not met, then the patent holder is nonetheless entitled to profits corresponding to its market share.  *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573 (Fed. Cir. 1989), *cert. den.*, 493 U.S. 1022 (1990). But "[i]n a market with only two viable competitors, one may infer that the

1  patentee would have made the infringer's sales or charged higher prices but for the infringing
2  competition." *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538 (Fed. Cir. 1987).

3
4
5
6                                            REDACTED
7
8
9

10      *Demand for the Patented Product*.  Zone Labs and Sygate compete head-to-head in what is
11  commonly referred to as the corporate desktop firewall market.  (Freund Decl., ¶ 7).  This market is
12  segmented based on size of installation—in other words, the number of computer users or "seats."
13  Large installations are, for example, over 5,000 seats.  Only Zone Labs and Sygate have acceptable
14  product offerings for large customers of the type that purchased Sygate's unauthorized ESL licenses,
15  and this is because of the unique capabilities of Zone Labs' patented technology embedded in both
16  products.

17      Zone Labs' product, "Integrity," is based on the technology described in the Zone Labs patent.  It
18  consists of, among other things, a desktop firewall that is run on each individual client computer or
19  "endpoint," and a central manager that pushes security rules out to the desktop firewalls, monitoring
20  their compliance with the rules.  *Id.* ¶ 5.  Key aspects of Integrity include centralized management and
21  easy scalability that are critical to large companies, because they ease the enormous administrative
22  burden of configuring and deploying the security rules.  These are major advantages that Integrity has
23  over its less sophisticated rivals.  Sygate's product, based as it is on the technology in the Zone Labs
24  patent, likewise incorporates the patented technology, thereby enabling it to serve large corporate
25  customers.  *Id.* ¶ 6.

26      Zone Labs' Integrity competes against Sygate's SSE from very small customers to the largest of
27  corporations.  Although other software companies offer competing products that may be acceptable to
28  small or even some medium sized companies, only Zone Labs and Sygate have historically offered

1   products that are suitable for large and very large companies.  This is in large part because of the

2   features incorporated from the Zone Labs patent—features that allow flexible central management, a

3   robust set of security rules, and centralized enforcement.  *Id.* ¶ 5.  Industry commentators also have

4   repeatedly noted that Zone Labs and Sygate are the main competitors in this market, and that other

5   would-be competitors lack the product sophistication, innovation, or visibility to compete effectively.

6   Ex. 7 (Deloitte Rpt. at 8–10).  Thus, there is a very strong demand for Integrity,

7

8   REDACTED

9                                                                              Zone Labs offers the

10  only other product having features and capabilities similar to Sygate's.  (Freund Decl., ¶ 34); Ex. 7

11  (Deloitte Rpt. at 8–10).

12

13  REDACTED

14

15

16      Zone Labs and Sygate have historically competed head-to-head for the same large corporate

17  customers.  (Freund Decl., ¶ 31).

18

19

20  REDACTED

21

22

23      Lost profit calculations need not be exact, but rather need only be calculated with reasonable

24  certainty.  *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984);

25  *Milgo Elec. Corp. v. United Bus. Communications, Inc.*, 623 F.2d 645, 665 (10th Cir. 1980); *see also*

26  *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) ("[W]hen the amount of the

---

27      [5] At a minimum, Zone Labs is entitled to lost profits corresponding to its roughly 50% market

28  share.  *See State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573 (Fed. Cir. 1989), *cert.
den.*, 493 U.S. 1022 (1990).

ZONE LABS' NOTICE OF MOTION AND MOTION FOR
ORDER HOLDING SYGATE IN CONTEMPT AND
AWARDING APPROPRIATE RELIEF
(C 01-4231 VRW)

1  damages cannot be ascertained with precision, any doubts regarding the amount must be resolved

2  against the infringer.").

3

4

5

6                                              REDACTED

7

8

9

10      Zone Labs has a staff of professional technicians that have the bandwidth to support multiple

11  installation sites, and has had no difficulty in timely deploying Integrity installations according to

12  customer demands. *Id.*

13

14

15                                          REDACTED

16

17

18

19      Large companies tend to have well-educated IT departments, and their IT

20  managers understand the importance of network security. *Id.*  They understand that new security threats

21  are constantly being created. *Id.*  Given their understanding of the nature of the problem and the risks,

22  large companies are often willing to pay   REDACTED   for the top-of-the-line network-based

23  security software, and Zone Labs has made sales of such size in the past. *Id.*  Large companies are

24  reluctant to use inferior network security software because of the gravity of the risks including loss of

25  critical data, industrial espionage, malicious hackers, corruption of files, and so on. *Id.*  Therefore, large

26  companies tend to look for, and pay a premium for, the top-of-the-line network-based security products.

27  *Id.*

28

1

2

**REDACTED**

3          Large companies like those often prefer to purchase enterprise site licenses,

4   because they prefer to avoid the administrative and logistical difficulties in calculating the number of

5   software copies used and amending their software licenses as they grow over time. *Id.*  Therefore, large

6   companies are willing to pay a premium for the administrative convenience of having an enterprise site

7   license, versus a license that has a limited number of seats.

8

9

10

**REDACTED**

11          Once gross revenues have been established, the "incremental income approach" is commonly

12   used to determine lost profits in a patent case. *Paper Converting*, 745 F.2d at 22; *Micro Motion, Inc. v.*

13   *Exac Corp.*, 761 F. Supp. 1420, 1429 (N.D. Cal. 1991).  Fixed costs such as management salaries,

14   property taxes, insurance, and research and development do not increase as the number of product units

15   manufactured and sold increases, and so are excluded from the lost profits calculation. *Paper*

16   *Converting*, 745 F.2d at 22; *Milgo*, 623 F.2d at 664–65.  Testimony from the patent holder regarding

17   fixed costs is given significant weight. *W.R. Grace & Co.-Conn, v. Intercat, Inc.*, 60 F. Supp. 2d 316,

18   326 (D. Del. 1999) (refusing to include costs for increased sales activity because Grace representatives

19   testified that these costs would not have gone up with the "would-be" increased sales).

20

21

22

23

24

25

26

27

28

**REDACTED**



REDACTED



REDACTED



REDACTED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



REDACTED

1280161

ZONE LABS' NOTICE OF MOTION AND MOTION FOR
ORDER HOLDING SYGATE IN CONTEMPT AND
AWARDING APPROPRIATE RELIEF
(C 01-4231 VRW)



REDACTED

ZONE LABS' NOTICE OF MOTION AND MOTION FOR
ORDER HOLDING SYGATE IN CONTEMPT AND
AWARDING APPROPRIATE RELIEF
(C 01-4231 VRW)



REDACTED



REDACTED

When purchasing a network software security product, customers—especially large companies—typically purchase PCS contracts for ongoing maintenance and support. (Freund Decl. ¶ 11). Not insignificant in value, PCS contracts are typically REDACTED of the base software purchase price. *Id.* PCS contracts typically provide the customer with, among other things, software updates and various upgrades as they become available. *Id.*

REDACTED



REDACTED

1
2
3
4
5
REDACTED
6
7
8

9  IV.    **CONCLUSION**

10        Zone Labs respectfully requests that the Court find Sygate in contempt of the Court's Injunction,

11  and order appropriate relief to Zone Labs as detailed herein and as set forth in the proposed order

12  submitted herewith.

13

14  Dated:  June 16, 2005                          Respectfully submitted,

15                                                 IRELL & MANELLA LLP
                                                   Morgan Chu
16                                                 Christopher Vanderlaan
                                                   Benjamin Hattenbach
17

18
                                                   By:   /s/ Benjamin Hattenbach
19                                                     Benjamin Hattenbach
                                                       Attorneys for Plaintiff
20                                                     ZONE LABS, INC.

21
22
23
24
25
26
27
28